UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON BUELOW,<br><br>*Plaintiff,*<br><br>*v.*<br><br>PLAZA MOTORS OF BROOKLYN, INC. d/b/a<br>PLAZA HONDA, and<br>AMERICAN HONDA FINANCE CORPORATION,<br><br>*Defendants.* | Case No. 17-cv-4288<br><br>**COMPLAINT WITH<br>JURY DEMAND** |

## COMPLAINT

### Nature of the Action

1.      The plaintiff, Brandon Buelow ("Plaintiff" or "Captain Buelow"), brings this action to remedy alleged violations of applicable consumer protection laws in connection with the sale by Plaza Motors of Brooklyn, Inc. d/b/a Plaza Honda ("Plaza" or "Dealer") of a Honda Pilot that was advertised, priced and sold to him as a new, undamaged motor vehicle, but was in fact previously damaged by an employee of Plaza, which had previously sold the Vehicle to another consumer, Alonzo Nimmons.

2.      Plaza's misrepresentations were not only directly made to Captain Buelow, but were also made to government authorities conducting an investigation of Captain Buelow's concerns.  Plaintiff seeks to rescind and/or revoke the vehicle sale transaction with Plaza as well as the finance company, American Honda Finance Corporation ("Honda Finance").  This complaint also prays for statutory, punitive, and exemplary damages, as well as for declaratory and injunctive relief.

## Parties

3.      Plaintiff is a natural person stationed in Solano County, California.   He is on active duty as a Captain with the United States Air Force, stationed at Travis Air Force Base and has been since December 17, 2015.  He is a citizen of Texas.

4.      Defendant Plaza Motors of Brooklyn, Inc. d/b/a Plaza Honda is incorporated under the laws of the State of New York with its principal place of business in Brooklyn, New York.

5.      Plaza is a licensed dealer of motor vehicles in the State of New York with dealer license #7024378 and in the City of New York as DCA license #1278055.

6.      Defendant American Honda Finance Corporation is incorporated under the laws of the State of California with its principal place of business in Torrance, California.

## Jurisdiction

7.      Jurisdiction of this court arises under 15 U.S.C. §§ 2310(d)(1)(B) and 2310(d)(3), as set forth below, in that the amount in controversy with regard to all claims to be determined in the suit exceeds $50,000.

8.      Jurisdiction of this court also arises under 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the plaintiff is a citizen of the State of Texas, whereas defendant Plaza is a New York corporation with its principal place of business in Brooklyn, New York, and Honda Finance is a California corporation with its principal place of business in Torrance, California.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2).

**Facts**

10.     In November of 2015, Plaintiff was living in the State of New Jersey stationed at

Joint Base McGuire-Dix-Lakehurst in New Jersey, but he had received orders that he was being

transferred by the United States Air Force to Travis Air Force Base, in California.

11.     At that time, Captain Buelow and his wife determined to get a new Honda Pilot to

help facilitate their cross-country relocation.

12.     Plaintiff found Dealer's advertisement for a 2016 Honda Pilot motor vehicle,

Dealer's stock #26471 (the "Vehicle") in the www.autotrader.com as well as on Plaza's own

website.

13.     The Dealer's advertisement in www.autotrader.com and on its own website

advertised the Vehicle as new, with the Vehicle being listed under Dealer's inventory of new

motor vehicles.

14.     The Vehicle had an MSRP (Manufacturer's Suggested Retail Price) of $43,700,

but an "Internet Price" of $43,200.

15.     On November 20, 2015, Plaintiff's wife, Angela Buelow, contacted Plaza by

telephone to find out whether the Vehicle was available and get more details, explaining, *inter

alia*, that the Buelows were a military family that currently lived in New Jersey, but were

relocating to California.  Plaza's authorized salesperson, Richard C. Garcia, spoke on the

Dealer's behalf to Mrs. Buelow about the Vehicle.

16.     During the November 20, 2015 telephone conversation between Mrs. Buelow and

Mr. Garcia, Dealer represented that the Vehicle had 334 miles because another prospective

purchaser had arranged to buy it, so the Vehicle was driven from Virginia to New York for that

prospective purchaser.  Mr. Garcia further represented that this purported prospective purchaser

3

subsequently decided on a different trim and decided not to go through with the purchase of the Vehicle, rendering the Vehicle available for sale by Dealer.  Dealer also represented that it would sell the Vehicle to Captain Buelow for the price of $41,400 to match a price that a different dealership in New Jersey had proposed for a new Honda Pilot.

17.     Relying on Dealer's representations, including those made orally and in Plaza's advertisements of the Vehicle in www.autotrader.com and on Plaza's website, Plaintiff's wife authorized a credit card payment over the telephone to Dealer in order to hold the Vehicle until Captain Buelow and his wife could travel the next day from their home in New Jersey to Dealer's principal premises in Brooklyn, New York.

18.     On or about November 21, 2015 ("Date of Sale"), Plaintiff and his wife traveled to Dealer's premises in Brooklyn regarding the Vehicle.

19.     When the Buelows arrived at Dealer's premises, they met with Mr. Garcia about the Vehicle.

20.     On the Date of Sale, Mr. Garcia repeated orally that the price of the Vehicle to Captain Buelow would be $41,400.

21.     On Date of Sale, a "Monroney sticker" was not affixed to the Vehicle, as required by 15 U.S. Code § 1233.

22.     On Date of Sale, Plaintiff asked for the window sticker, and Mr. Garcia represented that the prior dealership had removed the window sticker before the Vehicle was driven up from Virginia.

23.     Mr. Garcia said that he would send Plaintiff a copy of the Monroney window sticker.

4

24.     Eventually, when Plaintiff received a copy of the window sticker from Dealer, it had "DUPLICATE" stamped in red ink on it.

25.     One of the documents that Dealer prepared and had Plaintiff sign was entitled, "New York State Department of Motor Vehicles - Retail Certificate of Sale," which indicated Plaintiff as the purchaser and the prior owner as "American Honda Motor, Torrance, CA," and that the "Type of Sale" was "Retail" and "New."

26.     Another document that Dealer prepared and had Plaintiff sign was entitled, "Application for Certificate of Ownership," which was a form that was prepared by the New Jersey Motor Vehicle Commission, which indicated Plaintiff as the owner and Honda Finance as the lienholder, but no co-owner.

27.     Another document that Dealer prepared and had Plaintiff sign was entitled, "New Vehicle Invoice," which indicated that the Vehicle was "NEW," and sold by Dealer to Plaintiff, with lienholder American Honda Finance.

28.     Another document that Dealer prepared and had Plaintiff sign was entitled, "Application for Coverage for New York," which was an application for a Vehicle Service Contract, known as "Honda Care" on the Vehicle, which referred to the price of the service contract as being $2,235.00 plus $156.45 sales tax, for a total of $2,391.45 and the "Vehicle Retail Price" as being $43,700.00, with lienholder Honda Finance.

29.     Dealer gave Plaintiff and his wife a document entitled "Total Loss Protection Assurance," issued by Honda Finance, which they signed, which stated, among other things, "This Total Loss Protection Assurance is given in connection with the Retail Instalment Contract ('Contract') and is provided at no additional cost to you."  After the Date of Sale, Plaintiff learned from Honda Finance that this form of coverage is known as "Gap" insurance.

30.     Dealer also prepared and gave to Plaintiff the "New Vehicle Invoice," which referenced Dealer's stock #26471, indicated that Honda Finance was the lienholder, and showed the following amounts in the "sale" column:

| | |
|---|---:|
| PILOT | 43700.00 |
| TOTAL LOSS | 800.00 |
| SVC CONT | 2235.00 |
| SALES TAX | 3271.45 |
| LICENSE AND TITLE | 420.00 |
| DEALER'S OPTIONAL FEE FOR PROCESSING APPLICATION | 75.00 |
| FINANCING | 2741.89 |
| TOTAL | 53243.34 |
| CASH ON DELIVERY | 1000.00 |
| MILITARY | 500.00 |
| FINANCE CO | 49001.45 |
| PAYMENTS | 51743.34 |
| TOTAL | 53243.34 |

31.     Another document that Dealer prepared and had Plaintiff and his wife both sign was entitled, "Motor Vehicle (Automobile) - Simple Interest – Retail Installment Contract-Consumer Credit Document New York," which contained a "New or Used" box that represented the Vehicle as "NEW."

32.     Dealer also prepared and had Plaintiff sign a "Limited Power of Attorney and Authorization" form to authorize specified agents and employees (including Alisa Seepersad) of Dealer to sign and execute any documents necessary to process the transfer of title, registration, and license plates in the Vehicle to Plaintiff.

33.     On a subsequent date, unknown to Plaintiff, Alisa Seepersad executed on Plaintiff's behalf, pursuant to the limited power of attorney, the reverse side of the

6

Manufacturer's Certificate of Origin, issued 09/10/15 for the Vehicle, with Dealer named as the "first transfer" from American Honda Motor Co. Inc. and Honda Finance as the first lienholder

34.     On the Date of Sale, Mr. Garcia helped Plaintiff and his wife connect their Bluetooth devices to the Vehicle's system.

35.     During this process, the Buelows asked why other devices had been previously linked into the Vehicle's system, to which Mr. Garcia represented that it was "the guy who drove the car up from Virginia wanted to listen to his own music," and connected his Bluetooth devices.

36.     About six weeks after Date of Sale, the Vehicle's Sirius FM Satellite Radio stopped working, which was odd, because the Vehicle included three months of free satellite radio, yet this stopped half-way thru that period.

37.     Plaintiff contacted Sirius, who informed Plaintiff that the radio subscription for the Vehicle had been activated on October 10, 2015, some 42 days before Date of Sale.

38.     Plaintiff soon after obtained a "CarFax Vehicle History Report," which indicated that the Vehicle had only 10 miles on the odometer when it passed safety inspection and was sold to a customer on October 10, 2015.

39.     Plaintiff then requested a nearby Honda dealer in California provide a printout from Honda's Database, which informed Plaintiff of the previous owner's name (Nimmons) and that the Vehicle had 10 miles at purchase on the delivery date of 10/10/2015, when it was sold by Plaza.

40.     Plaintiff learned the previous owner's name is Alonzo Nimmons.

41.     In April of 2016, Plaintiff attempted to contact Mr. Nimmons to learn more about the Vehicle, and spoke with his wife, Mrs. Nimmons, who confirmed that Alonzo Nimmons had purchased the Vehicle from Plaza on October 10, 2015.

42.     Mrs. Nimmons then explained that a week after the purchase, Mr. Nimmons had dropped off the Vehicle at Plaza for a minor issue, and that Plaza had damaged the Vehicle in an accident while it was there for repair.

43.     Mr. Nimmons learned of the accident when he came by to pick up the Vehicle, at which time he saw that the front passenger side of the Vehicle had been "crushed in."

44.     Mr. Nimmons demanded a new replacement from Plaza, which eventually agreed to his demands.

45.     Dealer never disclosed the existence of a prior owner, that the Vehicle was not new, or that the Vehicle had sustained accident damage and, in fact, Dealer made false assertions to the contrary in an attempt to conceal the true facts.

46.     As alleged more particularly above, the following summarizes the material misrepresentations by Dealer upon Plaintiff and his wife:

  a.  The Vehicle was new and had not been previously owned;

  b.  The Vehicle had never been in an accident;

  c.  The prior miles on the Vehicle's odometer were the result of a driver bringing the Vehicle (while new) from a dealership in another state, which mileage was, in fact, incurred by the first buyer, Mr. Nimmons;

  d.  The Monroney sticker had been removed during the fictitious trip up from Virginia to New York; and

e.   Captain Buelow and his wife needed to pay Plaza $800 (plus sales tax) for Gap
Loss protection, even though American Honda Finance included such coverage
entirely free of charge.

47.   As a result of Plaza's failure to disclose the Vehicle's used status and its accident
prior to time of sale and in Plaza's online advertisement, Plaintiff is informed and believes that
the Vehicle's value is diminished, as the Vehicle is not, in fact, a pristine, low mileage, single-
owner vehicle, but rather a used car with multiple owners, undisclosed accident damage, and
uncertain provenance.

48.   Plaintiff significantly overpaid for the Vehicle, which was marketed and priced as
a new vehicle, but was, in fact, a used vehicle with undisclosed accident damage.

49.   Subsequent to the Date of Sale, Plaintiff has regularly made monthly payments in
full to Honda Finance for the purchase of the Vehicle.

50.   Plaintiff complained about the misrepresentations by Plaza that the Vehicle was
new, when it was used, to the New York Attorney General's office.

51.   Rather than admit to the problem and offer to rescind the Vehicle sale to Plaintiff,
Plaza denied almost all of the misrepresentations and was able to effect changes to the Vehicle's
CarFax Vehicle History Report and to American Honda Motor's warranty records to remove
references to the sale on October 10, 2015 to Mr. Nimmons.

52.   Thus, Plaintiff has been damaged by Plaza's conduct.

53.   Furthermore, Honda Finance is the holder in due course of the note and/or loan
obligation created by Plaza's sale of the Vehicle to Plaintiff.  As a result, Honda Finance is
subject to all claims and defense and Plaintiff may assert against the Dealer.

## CAUSES OF ACTION

### COUNT I
### California Song-Beverly Consumer Warranty Act

54.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing

paragraphs.

55.     Pursuant to the California Song-Beverly Consumer Warranty Act (referred to in

this Count as the "Act"), Cal. Civil Code § 1790, *et seq.*, the Vehicle constitutes "consumer

goods" purchased and used primarily for personal, family or household purposes and Plaintiff

has used the Vehicle primarily for said purposes.

56.     Pursuant to Cal. Civil Code § 1795.8 of the Act, the Vehicle is covered by the

Act, in that Captain Buelow is a member of the armed forces stationed in California (but a citizen

of Texas), who purchased in another state the Vehicle with a manufacturer's express warranty

from American Honda Motor Co, Inc., which sells motor vehicles in California.

57.     Dealer's sale of the Vehicle to Plaintiff was accompanied by the implied warranty

that the Vehicle was "merchantable" and "fit for the purpose for which it was being purchased."

58.     Dealer did not disclaim in conspicuous language that the Vehicle was being sold

on an "as is" or "with all faults" basis.

59.     Dealer did not label on the Vehicle or disclose in conspicuous language that the

Vehicle had been in an accident on the passenger side and, because collision repairs were

performed, the damage was not noticeable by Plaintiff, a lay person.

60.     Plaintiff has performed all things agreed to and required of Plaintiff under the

purchase agreement and warranties, except as may have been excused or prevented by the

conduct of Dealer.

61.     The defects and nonconformities present in this Vehicle when it was delivered to Plaintiff, substantially impair the use, value and/or safety of the Vehicle.

62.     Dealer breached the implied warranties at the time of sale.

63.     By failing to remedy the nonconformities, as alleged above, or to make restitution to Plaintiff, Dealer is in breach of its obligations under the Act.

64.     Plaintiff is justifiably entitled to revoke acceptance of this Vehicle under the Act and to receive restitution in the form of reimbursement of the purchase price paid by Plaintiff.

65.     Also, Plaintiff has suffered actual, incidental and consequential damages resulting from Dealer's failure to comply with its obligations under the Act.

66.     In that Dealer's breach of warranty was willful and deliberate, Plaintiff is entitled to a civil penalty of two times the actual damages, in addition to the other amounts recovered, pursuant to Cal. Civil Code § 1794.

67.     As a result of these violations, Plaintiff is entitled to rescission, actual, incidental and consequential damages resulting from Dealer's failure to comply with its obligations, statutory damages, declaratory judgment that Dealer's practices violate the California Song-Beverly Consumer Warranty Act, and attorneys' fees, costs and expenses.

## COUNT II
## Magnuson-Moss Warranty Act
## Breach of Express Warranty

68.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

69.     Dealer warranted to Plaintiff, both verbally and in writing, that the Vehicle was new, not used.

70.     As set forth herein, Dealer knew at all relevant times that the Vehicle was, in fact, used (and had been in a prior accident).

71.     The sale of the used Vehicle as new breached Dealer's express warranty to Captain Buelow.

72.     As a result of this breach, Plaintiff has suffered actual damages.

73.     Dealer made no meaningful disclaimer of any warranties at the time of sale.

74.     Dealer's breach of express warranty constitutes a violation of 15 U.S.C. § 2310(d).

75.     As a result of these violations, pursuant to 15 U.S.C. § 2310(d), Plaintiff is entitled to actual, incidental and consequential damages resulting from Dealer's failure to comply with its obligations, statutory damages, punitive damages, declaratory judgment that Dealer's practices violate the Magnuson-Moss Warranty Act, and attorneys' fees, costs and expenses.

76.     Plaintiff is entitled to and hereby elects cancellation and rescission of the loan in lieu of the actual damages attributable to the Vehicle's diminished value, but explicitly preserves his right to seek and hereby seeks all other money damages available under law.

## COUNT III
## Breach of Express Warranty
## New York UCC § 2-313

77.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

78.     Those facts supporting Plaintiff's claim for breach of express written warranties under the Magnuson-Moss Warranty Act, as set forth above, also constitute breach of express warranty under New York UCC § 2-313.

79.     Specifically, and without limitation, Dealer specifically stated in written and oral form that the Vehicle was "new" when in fact its actual condition was used.

80.     As such, and because no repair could rectify the inconsistency, Plaintiff was entitled to return or replace the Vehicle at no additional cost, but the Dealership did not permit him to do so.

81.     As a result of this breach of express warranty, Plaintiff is entitled to actual damages, declaratory judgments, reasonable attorneys' fees, costs and expenses.

82.     Plaintiff is also entitled to and hereby elect cancellation and rescission of the loan on the Vehicle in lieu of those actual damages attributable to the Vehicle's diminished value, but explicitly preserves his right to seek and hereby seeks all other money damages available under law.

**COUNT IV**
**Magnuson-Moss Warranty Act**
**Breach of Implied Warranty**

83.     Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

84.     Dealer is a "supplier" and/or "warrantor" within the meaning of the Magnuson-Moss Warranty Act.

85.     Dealer was a retail merchant with respect to the goods sold to Plaintiff.

86.     Plaintiff is a "consumer," as that term is defined in the Magnuson-Moss Warranty Act.

87.     The Vehicle is a "consumer product," as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

88.    There is no dispute resolution mechanism which applies to Captain Buelow's warranty dispute with Defendants.

89.    In the alternative, Defendants have no dispute resolution mechanism which is enforceable under the Magnuson-Moss Warranty Act and/or Captain Buelow's good-faith attempts to resolve his disputes, which Dealer rebuffed, constitute compliance with any reasonable dispute resolution requirement.

90.    An implied warranty that the Vehicle was merchantable arose by operation of law as part of the sale to Plaintiff and, because the Vehicle was expressly warranted, in writing, Dealer was unable to disclaim any implied warranties as a matter of law.

91.    15 U.S.C. § 2310(d) of the Magnuson-Moss Warranty Act provides, in relevant part, as follows:

> a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief— (A) in any court of competent jurisdiction[.]

92.    In selling the Vehicle to Plaintiff, Dealer warranted that the Vehicle was of a quality which would at least pass without objection in the trade, was of fair, average quality within the description, and was at least fit for ordinary purposes for which the Vehicle was sold.

93.    In purchasing the Vehicle, Plaintiff relied upon Dealer's said warranty of merchantability, as well as upon its representations and statements constituting express warranties, concerning the Vehicle.

94.    As set forth in detail above, the Vehicle was not of merchantable quality as a new motor vehicle.

95.     Because the Vehicle was not of merchantable quality when sold in that, *inter alia*, it was not fit for the ordinary purposes for which such goods are used, and would not pass in trade under the contract description, and because it cannot be put into merchantable quality, Dealer breached the implied warranty of merchantability.

96.     Plaintiff complained about the misrepresentations by Plaza that the Vehicle was new, when it was used, to the New York Attorney General's office.

97.     As set forth above, Dealer has refused to accept the return of the Vehicle and has refused to refund to Plaintiff the purchase price.

98.     As a result of the breach of implied warranty of merchantability, Plaintiff has suffered actual damages.

99.     Dealer's breach of the implied warranty of merchantability constitutes a violation of 15 U.S.C. § 2310(d).

100.    As a result of these violations, pursuant to 15 U.S.C. § 2310(d), Plaintiff is entitled to actual, incidental and consequential damages resulting from Dealer's failure to comply with its obligations under the Act, statutory damages, punitive damages, declaratory judgment that Dealer's practices violate the Magnuson-Moss Warranty Act, and reasonable attorneys' fees, costs and expenses.

101.    Plaintiff is entitled to and hereby elects cancellation and rescission of the loan in lieu of those actual damages attributable to the Vehicle's diminished value, but explicitly preserves his right to seek and hereby seeks all other money damages available under law.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
**New York UCC § 2-314**

102.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

103.    Those facts supporting Plaintiff's claim for breach of implied written warranties under the Magnuson-Moss Warranty Act, as set forth above, also constitute breach of the implied warranty of merchantability under New York UCC § 2-314.

104.    Specifically, and without limitation, Dealer specifically stated in written and oral form that the Vehicle was "new" when in fact its actual condition was used.

105.    As a result of this breach of the implied warranty of merchantability, Plaintiff is entitled to actual damages, declaratory judgment, reasonable attorneys' fees, costs and expenses.

106.    Plaintiff is also entitled to and hereby elects cancellation and rescission of the loan on the Vehicle in lieu of those actual damages attributable to the Vehicle's diminished value, but explicitly preserves his right to seek and hereby seeks all other money damages available under law.

## COUNT VI
## Rescission

107.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

108.    Plaza misrepresented numerous material facts as part of its sale of the Vehicle to Captain Buelow.  Specifically, as previously alleged, Plaza represented the Vehicle as new, not used, and as part of that lie advertised and sold the Vehicle as new and made related misrepresentations regarding the nature of the mileage on the Vehicle, the reason the Satellite radio was already linked to a subscriber, why the Monroney sticker was missing, that "Gap" insurance would be provided was required to be purchased, the price of the Vehicle, etc.

109.    Captain Buelow justifiably relied upon these material misrepresentations and would never have purchased the Vehicle but for Plaza's deception.

110.    Plaza's breach was material and willful.

111.    Plaza's breach is also so substantial and fundamental that it strongly tends to defeat the purpose of the contract.

112.    Damages will not afford Plaintiff a complete and adequate remedy and the status quo may be substantially restored by equitable relief.

113.    Plaintiff is entitled to and hereby rescinds his contract to purchase the Vehicle and all related contracts and services.

114.    As a result of these violations, Plaintiff is entitled to rescission of the retail installment sale contract, restitution of all monies paid thereunder, and costs and expenses

## COUNT VII
## New Jersey Consumer Fraud Act

115.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

116.    Dealer committed the following acts which constitute misrepresentations and/or unconscionable business practices:

a.  Advertising the sale of a motor vehicle as part of a plan or scheme not to sell it at the advertised price.

b.  Violating New Jersey's Consumer Fraud Regulations concerning the advertisement of a motor vehicle;

c.  Adding an undisclosed finance charge to the sale price of the Vehicle;

d.  Engaging in bait and switch advertising/selling practices by advertising the Vehicle at one price and then selling the Vehicle at a much higher price;

    e.   Obtaining Plaintiff's signature on documents under false pretenses;

    f.   Misrepresenting the price of the Vehicle;

    g.   Misrepresenting the condition of the Vehicle;

    h.   Charging Plaintiff a fee for insurance coverage without providing the promised coverage;

    i.   Overcharging for sales tax;

    j.   Failing to comply with New Jersey and federal laws.

117.    Dealer knowingly and with intent concealed, suppressed and omitted material facts in their interactions with Plaintiff in violation of N.J.S.A. § 56:8-1, *et seq.*

118.    Dealer violated N.J.A.C. § 13:45A-26A.4 by advertising the Vehicle as part of a plan or scheme not to sell it at the advertised price.

119.    Dealer refused to show, display, or sell the Vehicle in accordance with the terms of the advertisement in violation of N.J.A.C. § 13:45A-26A.4.

120.    Plaintiff suffered ascertainable losses as a result of each of the above business practice violations.

121.    As a result of these violations, Plaintiff is entitled to rescission/revocation of the Vehicle purchase contract, including return of all monies paid by Plaintiff and cancellation of the finance agreement, statutory, treble and/or punitive damages for injuries suffered by Plaintiff in the maximum amount permitted by applicable law, and attorneys' fees, costs and expenses

**COUNT VIII**
**Failure to Provide Notice of Repairs**
**<u>(New York General Business Law § 396-p)</u>**

122.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

123.    Each of the deceptive acts and practices set forth above constitute violations of New York Gen. Bus. Law § 396-p independent of whether these acts and practices constitute violations of any other law.

124.    Prior to the sale and delivery of the Vehicle, neither the Dealer nor any of its employees provided written notification to Plaintiff of any repairs undertaken to repair physical damage to the Vehicle.

125.    Upon information and belief, the repairs effected on the Vehicle by Dealership had a retail value in excess of five percent of the lesser of the manufacturer's or distributor's suggested retail price performed after shipment from the manufacturer to the Dealer, including damage to the Vehicle while in transit, including the cost of the retail charge for parts and labor at the Dealership's stated labor rates.

126.    As a result of the Dealership's failure to provide notice to Plaintiff, Plaintiff is entitled to a full refund of the purchase price of the Vehicle, any trade-in allowance plus fees and charges.

127.    In addition, Dealer is subject to a civil penalty not to exceed fifty dollars for the first offense and two hundred fifty dollars for the second and each subsequent offense.

## COUNT IX
### Deceptive Consumer Practices
### (New York General Business Law § 349)

128.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

129.    Each of the deceptive acts and practices set forth above constitute violations of New York Gen. Bus. Law § 349 independent of whether these acts and practices constitute violations of any other law.

130.    These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

131.    Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

132.    The Dealership's conduct and statements were materially misleading.

133.    As a result of these violations of New York Gen. Bus. Law § 349, Plaintiff suffered actual damages as set forth above.

134.    The Dealership's violations were willful and knowing and committed in bad faith.

135.    For these reasons, Plaintiff is entitled to actual damages as set forth above, three times the actual damages up to $1,000, punitive damages, attorneys' fees, costs and declaratory judgment that the Dealership's practices are deceptive in violation of § 349.

## COUNT X
### False Advertising
### (New York General Business Law § 350)

136.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

137.    Each of the acts and practices set forth herein, including but not limited to each act and practice set forth in the Counts for violations of the Magnuson-Moss Warranty Act, New Jersey Consumer Fraud Act, and common law fraud, *supra*, also constitute violations of New York Gen. Bus. Law § 350, which makes false advertising unlawful, independent of whether these acts and practices constitute violations of any other law.

20

138.    This false advertising was committed in the conduct of business, trade, commerce or the furnishing of a service in this state.

139.    Under New York Gen. Bus. Law § 350, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

140.    The Vehicle was represented as a "new" automobile in written advertising on autotrader.com and on the Dealership's website, and orally by the Dealership's representatives. These written and oral representations are "advertising" as defined by § 350.

141.    Defendants' false advertising was done knowingly and willfully and committed in bad faith.

142.    As a result of these violations of § 350, Plaintiff suffered actual damages including but not limited to the difference between the price paid less the decreased value of the Vehicle.

143.    For these reasons, Plaintiff is entitled to injunctive relief (enjoining the false advertising practices described above), declaratory judgment, actual damages, three times the actual damages up to $10,000, punitive damages, and costs and reasonable attorneys' fees pursuant to § 350.

**COUNT XI**
**<u>Fraud</u>**

21

144.    Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

145.    As set forth above, the Dealership defrauded Plaintiff, *inter alia*, by using a variety of predatory tactics to hide the accident and sales history of the Vehicle, misrepresenting the condition of the Vehicle, misrepresenting the price of the Vehicle, charging Plaintiff for insurance on the Vehicle without providing the promised coverage, adding an undisclosed finance charge, overcharging for sales tax, etc.

146.    As set forth in detail herein, the Dealership's representations regarding the condition of the Vehicle, Vehicle price, insurance provided, finance charge, and sales tax amount were materially false.

147.    The Dealership intended to deceive Plaintiff.

148.    Plaintiff believed and justifiably relied upon the Dealership's representations.

149.    Had the Dealership been truthful about the condition, including accident history, ownership history of the Vehicle, and charges imposed, Plaintiff would not have purchased the Vehicle.

150.    As a result of such reliance, Plaintiff sustained actual damages (including both pecuniary and non-pecuniary damages).

151.    The Dealership's conduct was willful, malicious and calculated.  It was egregious on every level; it was a virtually larcenous scheme.

152.    As a result of Plaintiff's reasonable reliance upon the Dealership's misrepresentations, Plaintiff is entitled to actual damages, punitive damages, and costs.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

I.    ON COUNT I, FOR VIOLATING THE CALIFORNIA SONG-BEVERLY CONSUMER WARRANTY ACT:  rescission of the retail installment sale contract and restitution of all monies paid thereunder; incidental and consequential damages; equitable relief; statutory damages, including a civil penalty of up to two times actual damages; declaratory judgment; and attorneys' fees, costs and expenses.

II.   ON COUNT II, FOR VIOLATING THE MAGNUSON-MOSS WARRANTY ACT (EXPRESS WARRANTY):  rescission of the retail installment sale contract and restitution of all monies paid thereunder; incidental and consequential damages; statutory damages; declaratory judgment; and attorneys' fees, costs and expenses.

III.  ON COUNT III, FOR BREACH OF EXPRESS WARRANTY UNDER NEW YORK UCC § 2-313:  rescission of the retail installment sale contract and restitution of all monies paid thereunder; incidental and consequential damages; declaratory judgment; and attorneys' fees, costs and expenses.

IV.   ON COUNT IV, FOR VIOLATING THE MAGNUSON-MOSS WARRANTY ACT (IMPLIED WARRANTY):  rescission of the retail installment sale contract and restitution of all monies paid thereunder; incidental and consequential damages; statutory damages; declaratory judgment; and attorneys' fees, costs and expenses.

V.    ON COUNT V, FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER NEW YORK UCC § 2-314:  rescission of the retail installment sale contract and restitution of all monies paid thereunder; incidental and consequential damages; declaratory judgment; and attorneys' fees, costs and expenses.

VI.    ON COUNT VI, FOR RESCISSION:  rescission of the retail installment sale contract and restitution of all monies paid thereunder; and costs and expenses.

VII.    ON COUNT VII, FOR VIOLATING THE NEW JERSEY CONSUMER FRAUD ACT: rescission/revocation of the Vehicle purchase contract, including return of all monies paid by Plaintiff and cancellation of the finance agreement; statutory, treble and/or punitive damages for injuries suffered by Plaintiff in the maximum amount permitted by applicable law; declaratory judgment; and attorneys' fees, costs and expenses.

VIII.    ON COUNT VII, FOR FAILURE TO PROVIDE NOTICE OF REPAIRS PURSUANT TO NEW YORK GBL § 396-p:  rescission/revocation of the Vehicle purchase contract, including a refund and return of all monies paid by Plaintiff and cancellation of the finance agreement; statutory damages in the maximum amount permitted by applicable law; and costs and expenses.

IX.    ON COUNT IX, FOR ENGAGING IN DECEPTIVE CONSUMER PRACTICES UNDER NEW YORK GBL § 349:  actual damages; three times actual damages up to $1,000; punitive damages; declaratory judgment that Defendants' acts and practices are deceptive, injunctive relief (enjoining the deceptive practices described above); and attorneys' fees, costs and expenses.

X.    ON COUNT X, FOR VIOLATING THE FALSE ADVERTISING LAW PURSUANT TO NEW YORK GBL § 350:  actual damages; three times actual damages up to $10,000; punitive damages; declaratory judgment that Defendants' engaged in false advertising; injunctive relief (enjoining the deceptive practices described above); and attorneys' fees, costs and expenses.

XI.   ON COUNT XI, FOR ENGAGING IN COMMON LAW FRAUD:  actual damages;

incidental and consequential damages; punitive damages; and attorneys' fees, costs and

expenses.

XII.   FOR ALL CAUSES OF ACTION:  prejudgment and post-judgment interest on any

amounts; and such other and further relief as the court deems just and proper.


**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury in this action as to all issues so triable.


Dated:  July 19, 2017

Respectfully submitted,

*/s/ Daniel A. Schlanger*
By:  Daniel A. Schlanger
Evan S. Rothfarb
KAKALEC & SCHLANGER, LLP
85 Broad St., 18th Floor
New York, NY 10004
T:  212.500.6114
F:  646.612.7996
dschlanger@kakalec-schlanger.com
erothfarb@kakalec-schlanger.com

*Attorneys for Plaintiff*
